562 A.2d 307

Donna K. SNYDER, Susan R. Fleming, Mitchell R. Johnson, an incompetent by his Guardian, Elizabeth G. Johnson,

v.

Kenneth C. HARMON, individually; and First Seneca Bank, Executor of the Estate of John J. Harmon, deceased, individually; and Kenneth C. Harmon and First Seneca Bank, Executor of the Estate of John J. Harmon, deceased, t/d/b/a Harmon Mining Company, a/k/a Harman Mining Company, a/k/a Harmon Coal Company, a/k/a Harman Coal Company, a partnership; and Harmon Coal Company, a/k/a Harman Coal Company, a/k/a Harmon Mining Company, a/k/a Harman Mining Company, a partnership; and Harmon Coal Company, a corporation, a/k/a Harman Coal Company, a corporation, a/k/a Harmon Mining Company, a corporation; a/k/a Harman Mining Company, a corporation; Orlando Harmon, i/t/d/b/a Harmon Coal Company; Paul C. Harmon, i/t/d/b/a Paul Harmon Coal Company; Paul C. Harmon, Jr., i/t/d/b/a Paul Harmon Coal Company; and Gary Clair Gruver, individually; and Department of Transportation, an agency of the Commonwealth of Pennsylvania; and Department of Environmental Resources, an agency of the Commonwealth of Pennsylvania; and Erie Insurance Exchange,

v.

William J. DOMBROWSKI and Kathleen A. Dombrowski, his wife, individually and trading and doing business as Sky View, a/k/a Sky View Lounge,

v.

Jerry BARRETT.

Appeals of COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.

Supreme Court of Pennsylvania.

Argued Sept. 26, 1988.

Decided July 12, 1989.

426

LeRoy S. Zimmerman, Atty. Gen., Mark E. Garber, Chief, Torts Litigation Unit, J. Elise Tourek, Frank J. Micale, Deputy Attys. Gen., John G. Knorr, III, Sr. Deputy Atty. Gen., Pittsburgh, Pa., for appellant.

Nicholas F. Lorenzo, Jr., Punxsutawney, Pa., for Donna K. Snyder, Susan R. Fleming and Mitchell R. Johnson, etc., et al.

Robert W. Weinheimer, Murphy, Taylor & Adams, P.C., Pittsburgh, Pa., for William J. Dombrowski, et ux., et al.

Joseph N. Mack, Dennis St. J. Mulvihill, Indiana, Pa., for First Seneca Bank, etc.

Blair F. Green, New Bethlehem, Pa., for Paul C. Harmon, Jr.

Gerald C. Bish, Brookville, Pa., for Kenneth C. Harmon.

Robert M. Hanak, Reynoldsville, Pa., for Gary Clair Gruver.

John L. McIntyre, Hollidaysburg, Pa., for Jerry Barrett.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS, STOUT, JJ.

## OPINION OF THE COURT

ZAPPALA, Justice.

We granted allowance of appeal to the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) to determine whether the Commonwealth Court erred in reversing in part the trial court's order granting summary judgment in favor of appellant and Commonwealth of Pennsylvania, Department of Environmental Resources (DER). While Commonwealth Court affirmed the grant of summary judgment as to DER, it reversed the trial court's order with respect to PennDOT by holding that sufficient allegations had been pled to raise material questions of fact. 102 Pa.Commw. 519, 519 A.2d 528 (1986).

The facts indicate that around 2:30 a.m. on November 2, 1980, appellees, Donna Snyder, Susan Fleming and Mitchell Johnson, left the Sky View Lounge in Punxsutawney along with Joyce Van Horn and Jerry Barrett. In the lounge's parking lot, William Shaffer joined the group who decided to take Barrett's car for the ride home. Jerry Barrett drove his car, along with the five passengers, out of the parking lot and onto Route 36 until reaching Oliveburg, where he turned onto Legislative Route 33060 (L.R. 33060). As they traveled along L.R. 33060, one of the passengers mentioned he had to relieve himself, so Barrett stopped the car along the berm of the road, which, unbeknown to the travelers, was directly adjacent to a strip mine.

The piece of property on which the strip mine was being operated was located in Oliver Township, Jefferson County. Bruce Poole, who owns the property, had leased it in 1973 to Harmon Mining Company (Harmon). In order to fully exploit the coal seam, Harmon sought and obtained a variance from DER that allowed mining within one hundred feet of L.R. 33060, which was owned, controlled and maintained by PennDOT. The variance required Harmon to build an earthen embankment on top of the highwall of the

strip mine to prevent cars from driving into the pit and dropping eighty feet to the bottom of the mine. The earthen embankment was six to seven feet wide and seven feet high, composed of lose dirt, rock and shale. By 1980, Harmon's mining activities had caused the earthen embankment to be moved closer to L.R. 33060.

After Barrett stopped his car on the berm of L.R. 33060, appellee Johnson got out of the vehicle. Within moments, defendant Gary Gruver, driving a four wheel drive vehicle, pulled onto the berm in front of Barrett's car and then proceeded to drive in reverse at a high rate of speed toward Barrett's vehicle. To avoid being hit, Johnson scrambled up the embankment, which was seven feet outside L.R. 33060's right-of-way, and fell to the bottom of the strip mine. He was left a paraplegic as a result of his fall.

Once Gruver's vehicle went around Barrett's car, William Shaffer, a passenger in the car, yelled and appellees Snyder, and Fleming along with Joyce Van Horn got out of Barrett's car. Gruver then drove forward toward Barrett's car and the three women standing on the berm. As Gruver rapidly approached them, the women scrambled up the embankment, which was approximately twelve feet outside the right-of-way, and fell into the mine. Snyder and Fleming sustained serious injuries; Joyce Van Horn was killed in the fall.

As a result of this tragedy, appellees filed suit in the Court of Common Pleas of Armstrong County. The basic allegation against PennDOT in the complaint was that this Commonwealth agency was negligent in permitting a dangerous condition to exist within its right-of-way. Specifically, appellees claimed that PennDOT. had failed to warn the public of the existence of the pit either by lighting, or by erecting physical barriers or guardrails along the right-of-way. It also alleged negligence in permitting mining activities to occur thereon. The allegations against DER were similar in nature but also included claims that DER failed to inspect or supervise the mine and enforce applicable mining laws. In their answer and new matter, PennDOT and DER

denied the allegations against them and raised as a bar to appellees' cause of action the rule of sovereign immunity and the failure of the cause of action to fall within one of the eight exceptions enumerated in 42 Pa.C.S. § 8522.

 Thereafter, PennDOT and DER each moved for summary judgment, alleging no genuine issue of material fact existed because the accident took place outside PennDOT's twenty foot statutorily granted right-of-way. Additionally, PennDOT and DER claimed that since the dangerous condition of the strip mine did not exist on Commonwealth realty, appellee's cause of action did not fall within any exception to sovereign immunity which entitled these Commonwealth agencies to summary judgment as a matter of law.[1] Attached to the motion was an affidavit signed by the District Right of Way Administrator for PennDOT which stated that the edge of the right-of-way of L.R. 33060 was twenty feet from the center of the roadway.

Following the filing of briefs and oral argument, the trial court granted PennDOT's and DER's motion for summary judgment. The court concluded that since DER did not own, possess or lease the property on which the highwall and strip mine were located, the mere authority to inspect the mining operation and enforce the laws of the Commonwealth would not support appellees' claim against DER. The court also reasoned that regardless of any incidental intrusions which Harmon may have made on the right-of-way, the dangerous condition which caused appellees' injuries at the point where appellees actually fell, was entirely

1. Appellees William J. and Kathleen A. Dombrowski (trading and doing business as Sky View Lounge), co-defendants in this action, claim that since PennDOT failed to raise in new matter or in its motion for summary judgment the issue of liability of PennDOT under the common law, the issue has been waived. This claim is specious since PennDOT raised 42 Pa.C.S. § 8522 in both the new matter and motion for summary judgment. We have recently held that a municipal immunity is a non-waivable defense. *Tax Claim Unit of Northampton County, Pennsylvania v. Windrift Real Estate Associates,* 522 Pa. 230, 560 A.2d 1388 (1989). *See also, Wilson v. Philadelphia Housing Authority,* 517 Pa. 318, 536 A.2d 337 (1988), citing *LaFlar v. Gulf Creek Industrial Park,* 511 Pa. 574, 515 A.2d 875 (1986).

beyond the limits of the PennDOT right-of-way.[2] Because DER did not own or control L.R. 33060 and the dangerous condition existed off of PennDOT's property, the court found 42 Pa.C.S. § 8522(b)(4) inapplicable.

In finding that appellees' cause of action against Penn-DOT did not fit into the aforementioned exception to sovereign immunity, the trial court distinguished the case *sub judice* from *Mistecka v. Commonwealth*, 46 Pa.Commw. 267, 408 A.2d 159 (1979). In *Mistecka*, the plaintiffs contended that their cause of action against the Commonwealth arose pursuant to 42 Pa.C.S. § 5110(a)(4) when they were injured by rocks thrown from an overpass onto a Commonwealth highway.[3] The trial court in the case *sub judice* perceived Commonwealth Court's holding in *Mistecka* to be that in such a situation, a dangerous condition of the Commonwealth highway did exist, despite the fact that the danger did not arise from within the right-of-way. The critical distinction the trial court made between the situation in *Mistecka* and that in this case was that the plaintiffs in *Mistecka* were injured while traveling within the Commonwealth's highway's right-of-way, which was not true of appellees.

On appeal, the Commonwealth Court reversed the trial court's order as to PennDOT. The court held that appellees had pled facts sufficient to show that a dangerous condition may have existed, so as to fall within the terms of Section 8522(b)(4).

2. While the trial court found it uncontroverted that the highwall was at some distance from the edge of the right-of-way at the points where appellees fell, it acknowledged that the precise distance from the edge of the right-of-way may be a matter of dispute. Paragraph Nine of the Complaint averred that the highwall and pit were twenty-one feet east of the paved portion of L.R. 33060. According to the Affidavit attached to the motion for summary judgment, the right-of-way of L.R. 33060 was twenty feet from the center of the road. *See* Trial Court Opinion p. 3.

3. 42 Pa.C.S. § 5110(a)(4) was the predecessor to the present Section 8522(b)(4), which substantially re-enacted the prior subsection. Section 5110 was a part of Section 5 of the Act of September 28, 1978, P.L. 788, Act No. 152–1978 (Act 152) which reinstated the doctrine of sovereign immunity following *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978).

Commonwealth Court found that this case was similar to *Lutzko v. Mikris, Inc.*, 48 Pa.Commw. 75, 410 A.2d 370 (1979). There a home owned by Lutzko was continually flooded during rainstorms due to the negligent construction of a subdivision that altered the contour of the land. The defendants in that case sought to join PennDOT as an additional defendant for failing to maintain proper drainage along a road under PennDOT's jurisdiction abutting Lutzko's property, as well as for negligently changing the grade of the road without installing appropriate drainage. The court in *Lutzko* allowed joinder of PennDOT because although the injury occurred in an area off Commonwealth property the dangerous condition which caused the injury (lack of proper drainage along state road) was on Commonwealth property.

Commonwealth Court concluded that although the fall into the strip mine, off Commonwealth property, was the immediate cause of appellees' injuries, the lack of a guardrail on the legislative route was alleged to be a dangerous condition that might also have been a cause of the injury. For this reason, the court determined the trial court erred in holding that appellees' cause of action against PennDOT did not fall within any of the exceptions to Section 8522(b).

This appeal presents two issues: whether PennDOT owed a duty to appellees either to take corrective action or warn of the existing hazardous condition on adjacent property of a third party and whether, if such a duty does exist, this claim is barred by sovereign immunity.

In *Mayle v. Pa. Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), this Court abrogated the doctrine of sovereign immunity. As a result of our action in rejecting sovereign immunity, our legislature enacted Act 152 so as to restrict instances when an individual may sue the Commonwealth. In so doing, the legislature granted an individual a cause of action only in specifically enumerated situations:

§ 8522 **Exceptions to sovereign immunity**

(a) **Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of

Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

The pertinent exception to the statute which is asserted to have applicability is Section 8522(b)(4) which provides:

**(4) Commonwealth real estate, highways and sidewalks.** A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

Thus, we must first determine whether PennDOT owed a duty to appellees pursuant to Section 8522(b)(4) .

Appellant argues that at common law in Pennsylvania a duty was never imposed on either a municipal or private property owner for a dangerous condition existing on adjacent property of a third party. Therefore, appellant contends, Commonwealth Court imposed a duty on PennDOT where no such duty existed. Conversely, appellees claim at common law one charged with the duty of keeping highways and roadways safe for travel was required to take measures to eradicate or reduce the risks posed by steep cliffs and embankments located upon or in close proximity to a highway or roadway. *See Balla v. Sladek*, 381 Pa. 85, 112 A.2d 156 (1955); *Winegardner v. Springfield Township*, 258 Pa. 496, 102 A. 134 (1917) (duty not confined to maintaining the bed of the road but extends to erection of barriers and other devices for guarding unsafe places along

the road); and *Scott Township v. Montgomery*, 95 Pa. 444 (1880).[4]

The parties have misperceived the duty that is owed by the Commonwealth in this specific situation. In order to ascertain that duty, it is necessary to first examine Section 8522(b)(4), the exception to sovereign immunity which appellees contend their claims come within. Because the general assembly intended to exempt the Commonwealth from immunity only in specific clearly defined situations, we must strictly construe this real property exception. *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988); *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). *See also Davidow v. Anderson*, 83 Pa.Commw. 86, 476 A.2d 998 (1984). We also are not free to change the clear meaning of the words to reach a desired result if the statutory language is unambiguous. 1 Pa.C.S. § 1921(b). The unambiguous language of Section 8522(b)(4) in relevant part provides "A dangerous condition of Commonwealth agency real estate ...".[5] These key words indicate that a dangerous condition must derive, originate from or have as its source the Commonwealth realty.

It is instructive to turn to the real property exception of the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(3) and its accompanying case law for guidance as to the scope of liability imposed for negligent care of real property.[6] As is true for sovereign immunity, exceptions to

**4.** Appellees, citing comments *(e)* and *(f)* to Restatement (Second) Torts § 368, also argued that certain deviations from the highway by both motorists and pedestrians are to be anticipated by the party charged with the duty of maintaining a public highway. However, Section 368 of the Restatement (Second) imposes a duty upon *the possessor of the land* who permits to remain thereon an excavation or other artificial condition near an existing highway.

**5.** The critical word in the statutory language is the word *"of"*. The meaning ascribed to this preposition is "(2) used to indicate derivation, origin or source." *See The Random House Dictionary of the English Language* Copyright 1966 by Random House, Inc.

**6.** 42 Pa.C.S. § 8542(b)(3), which provides in pertinent part:

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: ....

the rule of governmental immunity are narrowly interpreted, given the express legislative intent to insulate political subdivisions from tort liability. *Mascaro v. Youth Study Center, supra.*

■ For the limited waiver of 42 Pa.C.S. § 8542(b)(3) to apply, thereby waiving the political subdivision's immunity for negligent care of real property, there must be negligence which makes the real property itself unsafe for activities for which it is used. *Vince by Vince v. Ringgold School District,* 92 Pa.Commw. 598, 499 A.2d 1148 (1985). The government owned real estate must be able to afford safety not only for the activities for which the property is regularly used but also intended to be used or reasonably foreseen to be used. *See Cestari v. School District of Cheltenham Twp.,* 103 Pa.Commw. 274, 520 A.2d 110 (1987), alloc. denied, 517 Pa. 595, 535 A.2d 84 (1987). The focus of the negligent act involving a dangerous condition of government owned real estate becomes the actual defect(s) of the real estate itself. *Gratkie v. Air Wisconsin, Inc.,* 107 Pa.Commw. 461, 528 A.2d 1032 (1987), alloc. denied, 518 Pa. 628, 541 A.2d 1139 (1988). Finally, we have found the real estate exception to the rule of immunity under this section can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes injury, not merely when it facilitates injury by acts of others, whose acts are outside of the Political Subdivision Tort Claims Act's scope of liability. *See Mascaro v. Youth Study Center, supra.* (alleged negligent maintenance of detention center permitted violent juvenile offender to escape and commit sexual assault).

■ We hold, therefore, that sovereign immunity is waived pursuant to 42 Pa.C.S. § 8522(b)(4), where it is alleged that the artificial condition or defect of the land

(3) Real Property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages [with exceptions not relevant here]....

itself causes an injury to occur.[7] The corresponding duty of care a Commonwealth agency owes to those using its real estate, is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used.

The appellees next assert that the close proximity between L.R. 33060 and the deep chasm, and the unlit and deceptive appearance of the shoulder of the road presented an inherently dangerous condition. Thus, liability is not predicated on a defective condition on Commonwealth land, but rather the knowledge of an inherently dangerous condition contiguous with Commonwealth property which the Commonwealth knows or should reasonably know and takes no action to prevent any harm from occurring. While this theory appears attractive, it is not supported by any exception to our immunity statute.

It is uncontroverted that the strip mine highwall, at the points where the appellees fell, was some distance from the edge of PennDOT's right-of-way. Furthermore, the absence of lighting so as to create a deceptive appearance of the shoulder of the road cannot be said to be either an artificial condition or a defect of the land itself. Accordingly, we conclude that Section 8522(b)(4) is inapplicable to this cause of action. The issue of duty thus becomes moot.

Having determined that Section 8522(b)(4) is inapplicable, we must reverse the Order of the Commonwealth Court and reinstate the Order of the Court of Common Pleas of Armstrong County granting PennDOT's motion for summary judgment.

7. Heretofore, Commonwealth Court attempted to distinguish governmental immunity from sovereign immunity based on *Mistecka*. *See Gratkie v. Air Wisconsin, Inc.*, supra. However, in *Rippy v. Fogel*, 108 Pa.Commw. 296, 529 A.2d 608 (1987), the court perceptively concluded, based on *Mascaro*, that *Mistecka* may no longer be the law. In addition, the court also recognized the similarities of the governmental and sovereign immunity sections involving real property as casting serious doubt on the continued validity of *Mistecka*. Our holding today disavows the rationale of *Mistecka* and its progeny while affirming the similarities of the governmental and sovereign immunity sections that pertain to real property.

436

Jurisdiction relinquished.

STOUT, Former Justice, did not participate in the decision of this case.

LARSEN, J., dissents and would affirm based upon the Commonwealth Court's Opinion.