## McCormack v. City of Lancaster

*Joseph U. Metz,* for plaintiffs.
*Joseph G. Muzic,* for defendant City of Lancaster.

STENGEL, *J.,* June 23, 1992—This case involves an automobile accident which occurred on August 28, 1989, at the intersection of North Plum Street and Walnut Street in the city of Lancaster. Christina Updike drove her vehicle through a red light and struck the passenger side of a vehicle occupied by the McCormack family. The collision forced the McCormack vehicle into a utility pole located near the intersection. The left hand of Joseph

McCormack Jr., the driver, was caught between his vehicle and the utility pole and was crushed. The utility pole was owned by Pennsylvania Power & Light Co. and was located in a sidewalk which was in the right-of-way of a highway owned and controlled by the Commonwealth of Pennsylvania, Department of Transportation.

The McCormacks filed a complaint against, among others, the city of Lancaster generally alleging that the city gave permission for the utility pole to be located at that particular position and it exercised control over the location of the pole. Plaintiffs contend that the utility pole was too close to the road to satisfy any applicable engineering standard.

The city filed preliminary objections asserting governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541, et seq.[*]

The sole issue before the court is whether the McCormacks' allegations of the city's negligence fall within the governmental immunity exception covering the care,

_____

* Although Pa.R.C.P. 1030 provides in pertinent part that "[a]ll affirmative defenses including but not limited to ... immunity from suit ... shall be pleaded in a responsive pleading under the heading 'New Matter,'" the affirmative defense of governmental immunity may be raised by preliminary objections in the nature of a demurrer where that defense is apparent on the face of the pleading. *City of Philadelphia v. Buck,* 138 Pa. Commw. 250, 587 A.2d 875 (1991). Further, preliminary objections raising the defense of governmental immunity may be considered if the opposing party waives the procedural defect. *Wurth v. City of Philadelphia,* 136 Pa. Commw. 629, 584 A.2d 403 (1990); Pa.R.C.P. 1032. In this case, plaintiffs did not object to the city's raising an affirmative defense by preliminary objections.

custody and control of real property by a local agency under 42 Pa.C.S. §8542(b)(3).

The city generally enjoys immunity from liability under the Political Subdivision Tort Claims Act. The plaintiffs must demonstrate that their claim falls within one of the statutory exceptions to this immunity. The dispute here involves which exception, if any, applies.

The city contends that the relevant statutory exception is found in section 8542(b)(7). This states that liability may be imposed for a dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency. The city argues that the important phrase is "within the rights-of-way owned by the local agency." The city cites *Bruce v. Gadson,* 127 Pa. Commw. 159, 561 A.2d 74 (1989), which holds that the alleged defective condition must be within the right-of-way of a street owned by the local agency. The court continued that without ownership, there is no liability. *Bruce, supra* at 161, 561 A.2d at 75.

Plaintiffs contend that the utility pole in question was placed within the right-of-way owned by PennDOT, not owned by the city.

Plaintiffs contend that they are bringing this action under the "real property" exception set forth at section 8542(b)(3). The averments of negligence against the city are found in these sections of their complaint:

"(22) Defendant City of Lancaster had previously given permission for the pole to be placed at this position, and had exercised control over the location of the pole and the ground on which it was located, by so permitting its placement....

"(38)   The aforesaid collision and resultant damage was caused by the carelessness, recklessness and negligence of defendant City of Lancaster, which consisted, inter alia, of the following:

"(a) allowing and issuing a permit to PP&L to place a utility pole within inches of a heavily travelled roadway, thereby exercising care, custody and control over that utility pole and the realty on which it was located and creating a dangerous condition, of real property as defined at 42 Pa.C.S. §8542(b)(3)."   Complaint at paragraphs 22 and 38.

In ruling on a demurrer, the court must accept as true all well-pleaded factual averments in the pleading in question, as well as all reasonable inferences. *Allegheny County v. Commonwealth,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985); *Smith v. Wagner,* 403 Pa. Super. 316, 588 A.2d 1308 (1991).  Since sustaining a demurrer results in the denial of the pleader's claim or dismissal of his suit, such a preliminary objection can be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. *Allegheny County, supra; Vintage Homes Inc. v. Levin,* 382 Pa. Super. 146, 554 A.2d 989 (1989).

Because the complaint identifies a dangerous condition of real property, as defined at section 8542(b)(3), this court is constrained to analyze the facts of this case under the "real property" exception to immunity rather than the "sidewalk" exception, as urged by the city.

The "real property" exception to municipal immunity set forth at section 8542(b)(3) states:

"The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:...

"(3) *Real Property*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, 'real property' shall not include:...

"(iv) sidewalks."

There is an initial question of whether the real property exception applies at all in a case involving a sidewalk.

Section 8542(b)(3) provides that a local government waives its immunity for "the care, custody or control of real property" in its possession, except that *sidewalks* are not included within the definition of real property. "Sidewalks" are not defined in section 8542(b)(3). But, section 8542(b)(7) discusses liability for sidewalks within the rights-of-way of streets owned by local governments. Thus, plaintiffs contend that an overall view of section 8542(b)(3) makes it clear that the definition of "sidewalks" considered there means only sidewalks within the right-of-way of roadways owned by local government. They argue that the sidewalk here was not owned by the city and, therefore, the real property exception controls.

All of this, of course, assumes that the city controlled the pole or the placement of the pole or the ground where the pole was housed. Without control of the area, there would be no real property exception. We find no allegation that the city had "possession" of the utility pole

or the land on which it was located. We do find allegations that the city exercised "care, custody and control" of the real property in question because it had issued a permit to PP&L for the placement of the utility pole. (See Complaint at paragraph 22.) We do not believe that issuing a permit equals control.

In *Mentzer v. Ognibene,* 126 Pa. Commw. 178, 559 A.2d 79 (1989), the Commonwealth Court dealt with similar issues of "possession" and "control" for purposes of section 8542(b)(3). In *Mentzer,* a worker injured on a private construction site brought suit against a borough. The plaintiff alleged that the borough had "control" of the real property in question because the borough issued a building permit to the owners of the property and borough inspectors looked at the construction project prior to, and on, the date of the accident. The plaintiff further alleged that the borough had "control" because it had the power under the BOCA Building Code to permit the construction project, to stop the project, and to control the activities on the real property in question.

Initially, the court noted that "possession" for purposes of section 8542(b)(3) has not been strictly construed to mean ownership. *Mentzer, supra* at 187, 559 A.2d at 83. Therefore, the fact that the real property upon which the utility pole is located is owned by co-defendant PennDOT, and not by the city, is not determinative of this issue.

However, the Commonwealth Court continued that the allegations of "control" set forth in the complaint did not constitute "possession" within the real property exception either. The court ruled that "possession" does not include the "control" exercised by a governmental

agency over construction projects within its territorial boundaries through an ordinance regulating such projects. *Id.*

Similarly, we must refuse the request of plaintiffs to extend the meaning of "possession" for purposes of section 8542(b)(3) to include "control" exercised by a municipality over utility poles placed within its territorial boundaries through the regulating of permits for such poles.

There is another reason to not recognize an exception to immunity in this case. Regardless of whether the city possesses or controls the utility pole and the ground on which it is situated, the city is immune from liability because the real property exception does not apply to the negligent acts of third parties. This is true even when the acts are committed on governmental property and some defect of the property facilitates the injuries caused by the acts of third parties. *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989); *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987).

In *Mascaro,* a case involving a claim of governmental immunity under section 8541, the Pennsylvania Supreme Court construed section 8542(b)(3) as follows:

"We agree that the real estate exception to governmental immunity is a narrow exception and, by its own terms, refers only to injuries arising out of the care, custody or control of the real property in the possession of the political subdivision or its employees. Acts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably

be foreseen to be used, are acts which make the local agency amenable to suit. Acts of *others*, however, are specifically excluded in the general immunity section (42 Pa.C.S. §8541), and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees. This, of course, is a difference from the duties and liabilities of a private landowner who can be held accountable for the foreseeable [sic] criminal conduct of others...." *Id.* at 362, 523 A.2d at 1124. (emphasis in original)

The Pennsylvania Supreme Court concluded that the real estate exception applies only where a plaintiff alleges that the artificial condition or defect of the land itself causes the injury and not when it facilitates injury by a third party.

Two years after the *Mascaro* opinion, the Pennsylvania Supreme Court again addressed the real property exception contained in section 8542(b)(3). In *Snyder v. Harman, supra,* an action was brought against PennDOT for injuries sustained when several motorists who stopped on the berm of a legislative route next to an embankment fell into the bottom of an adjacent strip mine. The plaintiffs in *Snyder* argued that PennDOT was negligent in permitting a dangerous condition to exist within its right-of-way, specifically alleging that PennDOT had failed to warn the public of the existence of the strip mine pit either by lighting or through the erection of physical barriers or guard rails.

Initially, the court interpreted the "real estate" exception to sovereign immunity found at section 8522(b)(4) which

related to dangerous conditions of Commonwealth real estate. The court held that the unambiguous language of section 8522(b)(4) "indicate[s] that a dangerous condition must derive, originate from or have as its source the Commonwealth realty." *Snyder, supra* at 433, 562 A.2d at 311.

The Supreme Court then addressed the "real property" exception contained in section 8542(b)(3) and stated:

"[W]e have found the real estate exception to the rule of immunity under this section can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes injury, not merely when it facilitates injury by the acts of others, whose acts are outside of the Political Subdivision Tort Claims Act's scope of liability." *Snyder, supra* at 434, 562 A.2d at 312. See also, *Wellons v. SEPTA and City of Philadelphia,* 141 Pa. Commw. 622, 596 A.2d 1169 (1991) (real property exception did not apply in suit against the city of Philadelphia where plaintiff slipped on a paper bag on the steps of the Frankford elevated train platform as the placement of the bag, not a condition on the train platform, caused the injury); *City of Philadelphia v. Buck,* 138 Pa. Commw. 250, 587 A.2d 875 (1991) (real property exception did not apply in suit against the city of Philadelphia where hockey spectator was injured while attempting to interfere in a fight among hockey players); and *Douglas v. Philadelphia Housing Authority,* 134 Pa. Commw. 441, 578 A.2d 1011 (1990) (ham bone thrown from window of the Philadelphia Housing Authority building which struck plaintiff was "set in motion" by third party and did not emanate from the building as a result of any condition or defect of the real estate itself).

In the instant action, there are no allegations in the complaint that any artificial condition or defect in the pole or in the sidewalk where it was located caused the McCormacks' injuries. Rather, the automobile accident was allegedly set in motion by the actions of defendant Christina Updike in running a red light and striking the McCormack vehicle. The placement of the utility pole may have facilitated plaintiff's injury but does not allow for liability under the real estate exception.

Under the *Mascaro* and *Snyder* holdings, this court concludes that the allegations contained in plaintiffs' complaint are not sufficient to state a claim which falls within the real property exception to governmental immunity.

For the reasons set forth above, the city of Lancaster's preliminary objections in the nature of a demurrer will be sustained.

Accordingly, we enter the following

### ORDER

And now, June 23, 1992, upon consideration of the city of Lancaster's preliminary objections and the briefs filed by the parties, it is hereby ordered and decreed that city of Lancaster's preliminary objections are sustained and the claims against the city of Lancaster are dismissed with prejudice.