## Schreck v. PennDOT

C.P. of Monroe County, no. 5748 Civil 1996.

*Christine S. Lezinski,* for plaintiff.
*William A. Slotter,* for PennDOT.

WALLACH MILLER, *J.,* May 13, 1999—Myron Lee Schreck was a passenger in a vehicle driven by George Diem on September 21, 1994 which was involved in a collision on Interstate Route 380 in Coolbaugh Township, Monroe County. The two men were traveling eastbound at about 9:10 a.m. when, according to deposition testimony, they were in the passing lane following close behind a tractor-trailer to block the sun. When the tractor-trailer turned into the right-hand lane, Mr. Diem testified that the glare of the sun was strong and he reached for his windshield visor. The next thing he remembers is hitting the back end of a PennDOT truck that was the middle truck of a three-truck pothole repair crew. Mr. Schreck was injured in the accident.

Mr. Schreck and his wife filed a complaint against the Commonwealth of Pennsylvania, Department of Transportation on October 23, 1996 requesting that he be compensated for his injuries due to PennDOT's negligence

and also that Mrs. Schreck be compensated for loss of the consortium of her husband due to his injuries.

After the depositions of the parties were taken, PennDOT filed a motion for summary judgment on March 8, 1999. The legal basis of their motion is that the doctrine of sovereign immunity applies in this case and therefore the Commonwealth is not liable for any injuries caused. Plaintiffs argue that a material issue of fact is present in applying the doctrine and therefore the motion cannot be granted. Oral argument was held on May 3, 1999, and both parties filed extensive and well-researched briefs on the legal issues.

Sovereign immunity is an ancient doctrine perhaps best described by the late Pennsylvania Supreme Court Justice Musmanno in his dissenting opinion in Husser v. Pittsburgh School District, 425 Pa. 249, 254, 228 A.2d 910 (1967). In that case he wrote:

"The theory of governmental immunity for the tortious acts of governmental representatives, employes and agents is founded upon the presumption that a sovereign power cannot be adjudged in error, and this idea in turn stems from the meretricious formula that a king can do no wrong . . . Despite the fact that America discarded kings nearly two centuries ago and that the English monarch is now but an innocuous geniality, the common law deriving from British sovereigns still proclaims that the sovereign power can do no wrong."

Our constitution codified the doctrine and the Commonwealth continues to enjoy this immunity, but it is no longer absolute. 1 Pa.C.S. §2310. Our legislature has

created certain exceptions to this doctrine and has defined certain acts which will not permit the Commonwealth to raise this defense. 42 Pa.C.S. §8522.

The cause of action against PennDOT in this case relies entirely on the allegation that the movement of the trucks of the pothole repair crew caused the accident in which plaintiff husband was injured. This allegation requires a plaintiff to prove that his case falls within one of the exceptions enumerated in the above statute. He must prove that (1) the cause of action is one for which recovery may be had at common law or by statute; (2) the cause of action is one of nine enumerated exceptions to sovereign immunity; and (3) the plaintiff's injuries were caused by the negligence of the Commonwealth defendant.

The plaintiffs argue that several exceptions apply. These exceptions are as follows:

"Section 8522. Exceptions to sovereign immunity. . . .

"(b) Acts which may impose liability—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

"(1) Vehicle liability—the operation of any vehicle in the possession or control of a Commonwealth party. . . .

"(3) Care, custody, or control of personal property— The care, custody, or control of personal property in the possession or control of Commonwealth parties, includ-

ing Commonwealth-owned personal property and property of persons held by a Commonwealth agency . . .

"(4) Commonwealth real estate, highways and sidewalks—A dangerous condition of Commonwealth agency real estate and sidewalks, including . . . highways under the jurisdiction of a Commonwealth agency . . .

"(5) Potholes and other dangerous conditions—a dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements . . . ." 42 Pa.C.S. §8522.

On the day of the accident, three vehicles were in use by PennDOT. The first truck is called a "Roscoe" and it is used to fill the potholes in the roadway. Behind the Roscoe was a truck with an attached attenuator which is a safety device that crumples in case of an accident to prevent greater injury than could result if the truck itself were hit. About 1,500 feet behind the attenuator truck was a third truck with a flashing arrow board attached to it to warn motorists in the passing lane to change lanes. Additionally, one of the PennDOT employees, Edward Tanner, was in front of the third truck acting as a flagman and motioning drivers into the right lane.

The plaintiffs first argue that the vehicle exception applies since the Commonwealth vehicles were "in operation" at the time of the accident. In opposition to this, PennDOT argues that since the attenuator truck was not

moving at the time it was hit by Mr. Diem, it was not a "vehicle in operation" and the exception does not apply.

Our Pennsylvania Supreme Court has defined "operation" in the context of governmental or sovereign immunity to mean actual motion of the vehicle. *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988). The injury must be caused by movement of the vehicle or a moving part of the vehicle before the vehicle exception will apply. *SEPTA v. Simpkins,* 167 Pa. Commw. 451, 648 A.2d 591 (1994).

Depositions were taken of all the parties involved in the accident and at the scene at the time it occurred. No one testified that the attenuator truck was moving at the time it was struck. Its driver, David Witt, testified that it was stopped at the time of the accident. One employee, Dwayne Bartleson, testified that the vehicle he was sitting in was moving at the time of the accident. A close reading of his testimony shows that he was in the Roscoe and not in the attenuator truck. Since it is not alleged that the Roscoe caused the plaintiff's injuries, we find the movement of this vehicle irrelevant to this inquiry.

Pennsylvania courts have held that even when a vehicle is in use at the time of an accident, if it is not moving at the time an injury occurs, the vehicle exception does not apply. *Warrick v. Pro Cor Ambulance Inc.,* 709 A.2d 422 (Pa. Commw. 1997) (temporary stop not operation of a vehicle). Plaintiffs, however, cite *Vogel v. Langer,* 131 Pa. Commw. 236, 569 A.2d 1047 (1990) and argue that this case is applicable. A careful reading of *Vogel* reveals that there was an affirmative act on the

part of the bus driver in that case by signaling another driver that it was safe to go into an intersection which the Commonwealth Court found to constitute operation of a vehicle. See also, *White v. School District of Philadelphia,* 687 A.2d 4 (Pa. Commw. 1997) (bus driver indicated to child that it was safe to cross street).

We find no factual dispute that the attenuator truck was not moving at the time it was rear-ended. There are no allegations that the driver of this truck made an affirmative gesture which would qualify as "operation" under the plaintiffs' cited cases. There is, in fact, no testimony that the attenuator truck and its occupants were at anything other than a standstill. Thus, we find that the attenuator truck cannot qualify as a vehicle in operation for the purposes of the vehicle exception to sovereign immunity.

Plaintiffs next ask us to apply the personal property exception to sovereign immunity to hold PennDOT liable for plaintiff husband's injuries. Their argument recognizes that the attenuator truck does not qualify as personal property but they argue that signs should have been used by PennDOT to warn approaching traffic of the pothole repair crew and that these signs are personal property of the Commonwealth. Since PennDOT failed to use these signs, plaintiffs argue that this failure may result in liability under section 8522(b)(3). We can find no authority for this proposition.

The personal property itself must be in some manner responsible for the injury. *Warnecki v. SEPTA,* 689 A.2d 1023 (Pa. Commw. 1997). All deposition testimony re-

veals that PennDOT was in compliance with regulations regarding the use of signs at this type of construction site. The third vehicle which carried the flashing arrow board was, in fact, an optional safety device that the foreman elected to use that day. It was admitted that no signs were placed on the right berm of the interstate. However, Mr. Tanner, the foreman, testified that such signs are not practical and not required in this type of operation since an employee would have to continually cross the interstate each time the trucks moved to a new pothole. Again, since the injuries were not caused by any personal property in use or owned by PennDOT, we do not find section 8522(b)(3) applicable to these facts.

Next, the plaintiffs cite subsection (b)(4), commonly called the real estate exception, as a means of imposing liability on PennDOT. This exception requires that there must be a dangerous condition *of* the realty in question. In other words, the dangerous condition must derive, originate from or have as its source the Commonwealth realty. *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989).

In our facts, plaintiff husband was not injured by a pothole but rather when the truck in which he was a passenger ran into the rear of a vehicle which was behind a vehicle fixing a pothole. A parked or stopped vehicle, if indeed considered a dangerous condition, would be a condition *on* the realty, not one *of* the realty. Thus, under the rule of law set forth by our Supreme Court in *Snyder,* we find that this exception does not apply.

Finally, the plaintiffs argue that subsection (b)(5) applies because the presence of the PennDOT vehicles on the road created a dangerous condition. PennDOT argues that this section cannot apply because, even assuming that the stopped vehicle created a dangerous condition, it was not a condition created by natural elements. Reading the deposition testimony in the light most favorable to the non-moving party as we must do when ruling on a motion for summary judgment, we must agree with PennDOT's characterization. We do not find plaintiffs' argument that "but for" the dangerous condition, the pothole which they argue was caused by natural elements, the trucks would not have been present, to be persuasive. Plaintiffs have not submitted any legal authority to bolster this argument and we were not able to uncover any in our research.

One final argument put forward by the plaintiffs involves as what they characterize as a "judicial admission" made by PennDOT in the answer to their complaint. A judicial admission is not evidence but a formal pleading in the case, made by a party or counsel, which has the effect of withdrawing a fact from issue and dispensing with need for further proof of the fact. Packel & Poulin, *Pennsylvania Evidence,* section 805.5, at 666 (First Ed. 1987). A judicial admission is conclusive and may not be contradicted or explained. *Id.* The source of this admission, according to plaintiffs, is in PennDOT's answer to paragraph 8 of plaintiffs' complaint which alleges:

"(8) At the aforementioned time and date, the defendant, PennDOT, was engaged in the performance of con-

struction, maintenance, and/or repair work on Interstate 380 eastbound in Coolbaugh Township, Monroe County. This construction, maintenance, and/or repair work included pothole patching in the left-hand travel lanes of Interstate 380 eastbound. While performing said construction, maintenance and/or repairs, vehicles and equipment owned, controlled, and/or operated by the defendant, PennDOT, blocked the left-hand travel lane of eastbound I-380."

PennDOT filed an answer which admitted the allegations of this paragraph. While we agree with paintiffs that PennDOT in their answer admitted that on the day of the accident the vehicle "was owned, controlled, and/or operated" by the defendant, we do not find that this constitutes an admission that the attenuator truck was "in operation" as defined by appellate case law to qualify as an exception to the immunity statute.

Summary judgment may be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Pennsylvania Gas & Water Co. v. Nenna & Frain Inc.,* 320 Pa. Super. 291, 467 A.2d 330 (1983). Since we can find no exception to the sovereign immunity statute present in this case, we find that the defendant, PennDOT, is entitled to judgment as a matter of law. Accordingly, we enter the following order.

## ORDER

And now, May 13, 1999, defendant's motion for summary judgment is granted.