## Clark v. PennDOT

498

*Nancy Larkin Taylor,* for plaintiffs.
*Alton Grube,* for Commonwealth.

MELLON, *J.,* March 13, 2008—Plaintiffs appeal this court's grant of a compulsory nonsuit, entered in favor of the Commonwealth defendant, Pennsylvania Department of Transportation on December 5, 2007.

Plaintiffs filed this action on June 27, 2003 against PennDOT to recover for damages sustained when a tree fell on plaintiffs' vehicle. PennDOT joined as additional defendants, homeowners Karl and Edeltraud Miller. Plaintiffs subsequently added Warrington Township as a defendant in this case.

On November 28, 2007, trial commenced in the Bucks County Court of Common Pleas. Prior to the commencement of trial, plaintiffs settled with the homeowners. The case proceeded to trial against both Warrington Township and PennDOT.

At the close of all the evidence, on or about December 5, 2007, PennDOT moved for a compulsory nonsuit pursuant to Pa.R.C.P 230.1. Plaintiffs contend that the facts of this case fall within the real estate exception of 42 Pa.C.S. §8522(b)(4). The court found that 42 Pa.C.S. §8522(b)(4) was inapplicable in the instant case because plaintiff Daniel Clark's injuries were not caused by a condition of the government realty itself deriving, originating from, or having the realty as its source. Ac-

cordingly, PennDOT's motion for compulsory nonsuit was granted.[1]

Plaintiffs appeal this court's grant of PennDOT's motion for compulsory nonsuit. This opinion follows pursuant to Pa.R.A.P 1925(b).

## FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2002, plaintiffs were traveling westbound on Street Road, a state highway located in Warrington Township, Bucks County, Pennsylvania at approximately 6:30 p.m.[2] That evening, there was a fast-moving summer storm with high winds, torrential rain, lightening and thunder.[3] As the plaintiffs were approaching the intersection of Street Road and Griffiths Road, a tree located on the homeowners' property snapped and fell into Street Road, striking the plaintiffs' car. The falling tree impacted and crushed the roof of the vehicle.[4] This required both plaintiffs to be extricated from the vehicle.[5]

---

1. After PennDOT's motion for compulsory nonsuit was granted, Warrington Township settled with the plaintiffs.

2. Pl. compl. ¶¶6, 12.

3. N.T. 7:14-19. "We had a fast-moving storm that developed shortly, approximately a half-hour before that. It was high wind. It's one of those summer-type thunderstorms where it got real dark, high winds, torrential downpours, lightening, thunder. It was a real torrential storm." Testimony of Officer Friel.

4. N.T. 11:13-19 (Nov. 29, 2007). Testimony of Officer Daniel Friel. Debra Clark testified that as she was traveling westbound on Street Road, she thought a large limb fell from the tree in question. N.T. 14:15-22. Debra Clark further testified that she now knows it was a "whole tree." N.T. 18:4-7 (December 3, 2007).

5. N.T. 8:18-19 (Dec. 4, 2007). Testimony of Officer John Blanchard.

Debra Clark's passenger, son Daniel, was non-responsive after the collision.[6] Daniel was later rendered a paraplegic.

The tree in this case stood on the homeowners' property and not within PennDOT's right-of-way.[7] PennDOT's right-of-way is measured 16.5 feet in either direction from the center line of Street Road, for a total of 33 feet. In our case, due to high winds, the tree snapped from its trunk approximately 18.5 feet[8] *away* from the edge of PennDOT's right-of-way on Street Road and approximately 35 feet *away* from the center line of Street Road.[9]

Plaintiffs contend that the tree in this case is within PennDOT's right-of-way since there was an overhanging tree limb above PennDOT's right-of-way on Street Road. In support, plaintiffs rely on the testimony of the home-

---

6. N.T. 17:10-18 (Dec. 3, 2007). Testimony of Debra Clark.

7. Pl. compl. ¶15. Warrington Township and the plaintiffs dispute whether the tree in question was located on Warrington Township's right-of-way. Plaintiffs contended at trial that Warrington Township's right-of-way extended 40 feet from the center line of Street Road by virtue of the township's acceptance of a subdivision plan in 1955. Thus, plaintiffs argue that the tree in this case is located on Warrington Township's right-of-way since the tree was located 35 feet from the center line of Street Road. In response, Warrington Township contended that there was no "actual documentation" to demonstrate the official acceptance and dedication of this right-of-way. Prior to resolution of this issue, Warrington Township and plaintiffs settled. Therefore, this appeal focuses solely on the purported liability of the Commonwealth defendant, PennDOT.

8. The 18.5 feet distance is calculated by subtracting the location of the tree from the center line (35 feet) from the 16.5 foot distance of the right-of-way from the center line.

9. N.T. 17:8-15 (Dec. 4, 2007). Testimony of David Riley.

owner who allegedly called PennDOT to inform them of this allegedly dangerous limb which overhung PennDOT's right-of-way at a 30-degree angle.[10] Upon review, the record at trial was devoid of any evidence that any tree limb which overhung PennDOT's right-of-way separated from this tree and impacted the vehicle which caused Daniel Clark's injuries. Rather, the evidence established that the tree separated from its trunk and fell as a single unit from the homeowners' property.

## STATEMENT OF MATTERS
## COMPLAINED OF ON APPEAL

Pursuant to Pa.R.A.P. 1925(b), Plaintiffs filed a concise statement of matters complained of on appeal on or about February 7, 2008.

On appeal, plaintiffs present the following issue:

"(1) The court erred in deciding as a matter of law and removing from the jury's consideration, the issue of whether, under the circumstances and given the testimony that PennDOT was warned of the danger and the testimony of its former employees, the tree and limb constituted a dangerous condition of Commonwealth real estate, bringing the condition within the waiver of sovereign immunity of 41 Pa.C.S. §8522(b)(4)."[11]

---

10. N.T. 13 (Nov. 29, 2007). Testimony of Karl Miller.
11. The applicable statute is *42* Pa.C.S. §8522(b)(4).

## DISCUSSION

### A. *This Court Finds That PennDOT Is Entitled to Sovereign Immunity Under Pennsylvania Law Because Plaintiff Has Failed To Prove That the Tree Is Located on Commonwealth Property*

The standard of review in determining the propriety of the entry of a nonsuit is well settled: a judgment of nonsuit is properly entered if a plaintiff has not introduced sufficient evidence to establish the elements necessary to maintain an action.[12] Based on the following, this court granted PennDOT's motion for a compulsory nonsuit.

The Commonwealth parties, including PennDOT, are entitled to sovereign immunity unless the cause of action falls within the strictly construed exceptions defined in 42 Pa.C.S. §8522.[13] Plaintiffs contend that this case falls within the real estate exception and applies because this action involves an allegedly dangerous condition of PennDOT's right-of-way. Specifically, liability is imposed under 42 Pa.C.S. §8522(b)(4) if:

"*(b) Acts which may impose liability.*—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

---

12. *Kramer v. Port Authority of Allegheny County,* 876 A.2d 487 (Pa. Commw. 2005).

13. *Jones v. SEPTA,* 565 Pa. 211, 217, 772 A.2d 435, 439 (2001). "Subsection 8522(b) then delineates the specific instances in which the defense of sovereign immunity may not be raised."

*"(4) Commonwealth real estate, highways and sidewalks.*—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5)."

The 2001 Pennsylvania Supreme Court case *Jones v. SEPTA* is the leading case which defines this applicable standard in imposing liability on a Commonwealth party, such as PennDOT, under the Sovereign Immunity Act's real estate exception. In *Jones,* the court concluded that liability depends on the "legal determination that an injury was caused by a condition of the government realty itself *deriving, originating from, or having the realty as its source.*" (emphasis added)[14]

The Commonwealth Court's decision in *Marker v. Commonwealth of Pennsylvania* aptly enunciates this standard:

"[T]he characterization of the real estate from which a dangerous condition derives or originates from is material. If the real estate in question from which the dangerous condition derives, originates from, or has as its source, is not Commonwealth realty, then the Commonwealth cannot be held liable under the real estate exception to sovereign immunity."[15]

---

14. *Id.* at 226, 772 A.2d at 444.
15. *Marker v. PennDOT,* 677 A.2d 345, 348 (Pa. Commw. 1996).

Applying this standard to the facts before us, it is clear that the tree which fell during the wind storm did not derive, originate from, or have as its source, the Commonwealth realty. It was undisputed that the portion of the tree which failed was on the homeowners' property. The mere fact that a branch or limb of the tree overhung the state highway is insufficient to impose liability on PennDOT. There was no evidence that any portion of the tree which overhung the state highway created a dangerous condition. The undisputed evidence establishes that the dangerous condition of the diseased tree failed from its trunk. The trunk of this tree was not located on Commonwealth realty. Therefore, plaintiffs have failed to satisfy the terms of the Sovereign Immunity Act's real estate exception.

### B. *Plaintiffs' Failure To Establish That the Tree Was on Commonwealth Property Is Fatal to Their Claim*

Plaintiffs principally argue that the tree in this case was a dangerous condition because a limb of this tree overhung a portion of PennDOT's right-of-way.[16] Plaintiffs rely on the testimony of homeowner Karl Miller who testified that he was concerned about a large limb overhanging the road.[17] Plaintiffs correspondingly argue that PennDOT failed to remove this allegedly dangerous limb in contravention of their operational duties set forth

---

16. N.T. 21:4-14 (Nov. 29, 2007). Testimony of Karl Miller.

17. N.T. 21 (Nov. 29, 2007). Testimony of Karl Miller. Karl Miller testified that a branch, eight inches in diameter, allegedly went halfway across Street Road at a 30-degree angle. N.T. 13 (Nov. 29, 2007).

in chapter 13 of their maintenance manual.[18] Each argument will be evaluated in turn.

First, despite plaintiffs' concession that the tree in this case failed from its trunk 35 feet from the center line on Street Road, plaintiffs nonetheless argue that an overhanging limb within PennDOT's right-of-way is sufficient to effectuate a waiver of sovereign immunity. Such an argument is clearly a red-herring and irrelevant to the case at bar. Our Supreme Court found in *Snyder v. Harmon* that the real property exception to the Sovereign Immunity Act must be *strictly* construed such that any dangerous condition must exist from "Commonwealth agency real estate."[19] Thus, any dangerous condition "must derive, originate from, or have as its source, the Commonwealth realty."[20]

In our case, it is clear that the allegedly dangerous condition is the trunk of the tree located outside PennDOT's right-of-way. Therefore, crediting any

---

18. Chapter 13 of PennDOT's Roadside Maintenance Manual at section 13.6 reads:

"Any dead, weakened or decayed trees and limbs within the right-of-way which constitute a dangerous condition of the state highway (as verified by the district roadside specialist) shall be scheduled for removal. 36 Pa.C.S. §670-410.

19. *Snyder v. Harmon,* 522 Pa. 424, 433, 562 A.2d 307, 311 (1989). In this Supreme Court decision, several people were injured when they fell off a high wall into a strip mine located 12 feet from a Commonwealth highway. Since the allegedly dangerous strip mine was located some distance away from the Commonwealth's right-of-way, our Supreme Court determined that the mine did not derive, originate from, or have as its source, the Commonwealth realty. Accordingly, our Supreme Court reinstated the lower court's order granting PennDOT's motion for summary judgment.

20. *Id.*

weight to plaintiffs' argument would be contrary to all of the record evidence. At trial, plaintiffs could not identify any particular branch or limb which allegedly caused Daniel Clark's tragic injuries. In fact, quite the opposite was gleaned. Debra Clark testified that she now knows it was a "whole tree" which fell on her car, not just a branch she previously thought she saw as she passed the intersection of Griffiths and Street Roads.[21] Further, police officers at the scene could not identify any particular branch or limb which fell on plaintiffs' vehicle as parts of the tree were scattered all over Street Road.[22] The indisputable evidence in this case is that the tree snapped from its trunk 11 feet off the ground and 18.5 feet away from the edge of PennDOT's right-of-way. Thus, the snapping point of the tree, allegedly creating the dangerous condition, was well outside PennDOT's right-of-way. In strictly construing the allegedly dangerous condition causing Daniel Clark's injuries, plaintiffs' argument fails.

Likewise, plaintiffs' second argument similarly fails. Plaintiffs argue that PennDOT failed to remove this allegedly dangerous limb which overhung PennDOT's right-of-way on Street Road in violation of their maintenance manuals which require any dead, weakened or

---

21. N.T. 18:4-7 (Dec. 3, 2007). Testimony of Debra Clark. *Q:* "What hit the car, do you know?" *A:* "I know now. I didn't know—at that time I thought it was half the branch that I saw. Now I know the whole tree hit the car."

22. N.T. 9:23-10:1 (Dec. 4. 2007). Testimony of Officer John Blanchard. *Q:* "So between his actions and the actual impact itself, were parts of the tree scattered all over?" *A:* "Yes. They were all over."

decayed trees and limbs within its right-of-way which constitute a dangerous condition to be removed.

In evaluating this argument, it is clear that plaintiffs' argument is misplaced and misguided. PennDOT's respective duties under its maintenance manuals only become relevant when plaintiffs have satisfied the threshold legal inquiry that there be a "dangerous condition" of Commonwealth realty. Our courts have consistently held that liability depends, first, "on the legal determination that an injury was caused by a condition of government realty itself, deriving, originating from, or having the realty as its source, *and, only then, the factual determination that the condition was dangerous.*" (emphasis added)[23] Plaintiffs continually argue that "liability is premised on its failure to correct a dangerous condition of which PennDOT knew."[24] Under Pennsylvania law, such is an untenable position.

In *Marker v. Commonwealth of Pennsylvania,* our Commonwealth Court refused to evaluate PennDOT's duties under its maintenance manuals since plaintiffs could not show that the allegedly dangerous condition was "of Commonwealth realty."[25] The court rejected

---

23. *Jones,* 565 Pa. at 221, 772 A.2d at 441, citing *Finn v. City of Philadelphia,* 541 Pa. 596, 605, 664 A.2d 1342, 1346 (1995). Our Supreme Court in *Jones* found that their decision in that case was entirely consistent with the decision in *Finn.*

24. Plaintiffs' brief in response to defendant PennDOT's motion for compulsory nonsuit, 5.

25. *Marker v. PennDOT,* 677 A.2d 345, 349 (Pa. Commw. 1996). Plaintiffs will likely rely on the *Marker* decision for the proposition that evidence of an overhanging limb within PennDOT's right-of-way is sufficient to bring about a waiver of sovereign immunity. However, that case involved a lack of *any* evidence discerning the location of the

plaintiff's contention that PennDOT was liable "based on a responsibility to inspect property *outside its legal right-of-way* located adjacent to state highways for potential hazards to the motoring public." [26]

In our case, it is clear that plaintiffs have failed to satisfy the threshold legal inquiry since plaintiffs have failed to prove that the trunk of the tree in question causing Daniel Clark's injuries derived, originated from, or has as its source, Commonwealth property. Since plaintiffs have failed to show that the allegedly defective trunk of the tree was a "dangerous condition *of* Commonwealth realty," no further examination of PennDOT's duties is warranted.

Assuming arguendo that the overhanging limb in this case is determined to be a dangerous condition, this court found that PennDOT would still be entitled to a compulsory nonsuit because plaintiffs have failed to establish a prima facie case. Specifically, plaintiffs have failed to establish a causal connection between this overhanging limb and Daniel Clark's tragic injuries. [27] The evidence at trial was clear that the tree in question, causing Daniel

---

allegedly dangerous tree. In our case, however, the location of the allegedly dangerous condition is clear: 18.5 feet from the edge of PennDOT's right-of-way and 35 feet from the center line of Street Road.

26. *Id.*

27. See *Mailey v. SEPTA,* 104 Fed.Appx. 224 (C.A.3 Pa. 2004) (finding that to prevail under the real estate exception to sovereign immunity, it must be shown that some defect or dangerous condition in the property itself directly caused his injuries) citing *Jones v. SEPTA,* 565 Pa. at 226, 772 A.2d at 443-44.

Clark's injuries, failed from its trunk on the homeowners' property. To the contrary, there was no evidence in the record to support plaintiffs' argument that an overhanging limb over PennDOT's right-of-way was the cause of Daniel Clark's injuries.

## CONCLUSION

A judgment of nonsuit is properly entered if a plaintiff has not introduced sufficient evidence to establish the elements necessary to maintain an action.[28] Since plaintiffs have failed to show that the tree in question was located on Commonwealth property, this court granted PennDOT's motion for compulsory nonsuit pursuant to Pa.R.C.P 230.1.

---

28. *Kramer,* 876 A.2d 487 (Pa. Commw. 2005).