IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Ellen P. Schmidt as the Administratrix of the Estate of Geoffrey J. Schmidt, Deceased | : : : : |
| | : No. 33 C.D. 2023 |
| v. | : |
| | : Argued: April 9, 2024 |
| Pennsylvania Department of Transportation; Upper Merion Township; The Southeastern Pennsylvania Transportation Authority; The Valley Forge Historical Society; The Friends of Valley Forge and John Does (1-10) | : : : : : : : : : |
| | : |
| Appeal of: Department of Transportation | : : |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                   HONORABLE LORI A. DUMAS, Judge
                   HONORABLE MATTHEW S. WOLF, Judge


OPINION
BY JUDGE DUMAS                                        FILED: October 11, 2024


The Pennsylvania Department of Transportation (PennDOT) appeals from the order entered in the Court of Common Pleas of Montgomery County (trial court) on December 9, 2022, which denied PennDOT's motion for summary judgment. In its motion, PennDOT asserted its sovereign immunity and argued that the relevant facts did not fit into the real estate exception to sovereign immunity set forth in what is commonly known as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8501-8564. After careful review, we conclude that the trial court's decision is inconsistent with the clear intent of the legislature to insulate government from exposure to tort liability and at odds with prevailing precedent. We are therefore

constrained to reverse the trial court's order and remand with instructions to enter summary judgment in favor of PennDOT.

## I. BACKGROUND[1]

On March 2, 2018, Geoffrey J. Schmidt (Schmidt) sustained fatal injuries after the branch of a large tree, overhanging the road, fell and crushed his vehicle as he drove on South Gulph Road, a Commonwealth highway, in Upper Merion Township (Township), Montgomery County. The tree was planted on property owned by the Southeastern Pennsylvania Transportation Authority (SEPTA). Although branches of the tree extended over the road and PennDOT's right-of-way, the base of the tree was located outside of PennDOT's right-of-way.[2]

Subsequently, Schmidt's widow, Ellen P. Schmidt (Appellee), commenced this litigation against PennDOT, SEPTA, and others.[3] Appellee averred that the tree had decayed to the point of breakage and was leaning over the roadway, creating a dangerous condition, and that the defendants were negligent in failing to inspect and maintain the tree. Against PennDOT, Appellee brought claims sounding in negligence, wrongful death, and the Survival Act.[4]

PennDOT filed a motion for summary judgment, contending that Appellee's claims were barred by sovereign immunity and not subject to any of the enumerated exceptions to that immunity. Specifically, according to PennDOT, the

---

[1] Unless otherwise stated, the recitation of facts is based upon the trial court's opinion, which is supported by the record. *See* Trial Ct. Op., 2/27/23, at 1-3.

[2] The tree was four feet outside of PennDOT's right-of-way. *See* Pl.'s Resp. to Mot. for Summ. J., 7/1/22, Ex. A.

[3] On August 6, 2021, the trial court approved a settlement with additional named defendants the Township, Valley Forge Historical Society, and Friends of Valley Forge. PennDOT and SEPTA are the remaining named defendants.

[4] 42 Pa.C.S. § 8302.

real estate exception[5] did not apply because the base of the tree was located on property owned by SEPTA rather than the Commonwealth. Appellee responded in opposition, highlighting expert evidence that the decayed portion of the tree overhung PennDOT's right-of-way.[6] *See* Pl.'s Resp. to Mot. for Summ. J., 7/1/22, Ex. A.

Following oral argument, the trial court denied summary judgment. The court reasoned that the applicability of the real estate exception depended on "the location of that [dangerous] portion of the tree with respect to the Commonwealth's property." *See* Trial Ct. Op. at 10 (emphasis removed). Pointing to Appellee's expert evidence, the trial court concluded that the real estate exception to PennDOT's sovereign immunity was applicable. *See id.* PennDOT timely appealed to this Court.[7]

## II. ISSUE

The sole issue in this appeal is whether PennDOT is entitled to sovereign immunity from the claims against it, where the tree that fell did not derive, originate from, or have as its source any PennDOT real estate. *See* PennDOT's Br. at 4; *see also* Mot. for Summ. J., 6/1/22.

---

[5] 42 Pa.C.S. § 8522(b)(4).

[6] The expert report was authored by John Hosbach, an arborist and tree risk assessor. *See* Pl.'s Resp. to Mot. for Summ. J., 7/1/22, Ex. A. The report opined that although the base of the tree was on SEPTA's property, the branch of the tree, which hung over the road, was within PennDOT's right-of-way. *See id.* Further, the report noted that the tree had been hit by lightning, which ultimately resulted in decay, rot, and disease in the portion of the branch that overhung the road. *See id.* There is no evidence that the branch obstructed the highway.

[7] An order denying summary judgment where a party has raised the defense of sovereign immunity in a personal injury action is immediately appealable as a collateral order pursuant to Pa.R.A.P. 313. *See Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 371 (Pa. 2021).

3

### III. DISCUSSION[8]

### A. Sovereign Immunity

### 1. Sovereign Immunity Generally

Article I, section 11 of the Pennsylvania Constitution provides, in relevant part, that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. art. I, § 11. Accordingly, the General Assembly has declared "that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310.

PennDOT is an administrative agency of the Commonwealth. *See Powell v. Drumheller*, 653 A.2d 619, 621 (Pa. 1995); *Bubba v. Pa. Dep't of Transp.*, 61 A.3d 313, 316 (Pa. Cmwlth. 2013); 42 Pa.C.S. § 8501. It is generally immune from tort liability. *See Dean v. Dep't of Transp.*, 751 A.2d 1130, 1132 (Pa. 2000), *Bubba*, 61 A.3d at 316 (citing *Cowell v. Dep't of Transp.*, 883 A.2d 705, 708 (Pa. Cmwlth. 2005)); 42 Pa.C.S. § 8521(a).

This immunity is not without limits. The General Assembly has enumerated specific exceptions to sovereign immunity in what is commonly known as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8501-8564. *See Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 371 (Pa. 2021); 42 Pa.C.S. § 8522(b) (listing 10 exceptions

---

[8] "On appeal from a trial court's order granting or denying summary judgment, our standard of review is *de novo*[,] and our scope of review is plenary." *Carpenter v. William Penn Sch. Dist.*, 295 A.3d 22, 29 n.5 (Pa. Cmwlth. 2023) (citation omitted). Summary judgment is properly entered only when, "after examining the record in the light most favorable to the non-moving party, and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law." *See id.* (citation omitted).

to Commonwealth parties' sovereign immunity). To prevail in a negligence cause of action against PennDOT or another Commonwealth agency, a plaintiff must establish that (1) the injuries would be recoverable under the common law, or a statute creating a cause of action if they had been caused by an individual not subject to sovereign immunity; and (2) the cause of action falls within an enumerated exception to the Sovereign Immunity Act. *Dean*, 751 A.2d at 1132; 42 Pa.C.S. § 8522.

Nevertheless, the Pennsylvania Supreme Court has long recognized the clear legislative intent to insulate the government from tort liability. *See, e.g.*, *Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989) (narrowly construing the real estate exception). Therefore, the Supreme Court has instructed that "courts must strictly construe the legislatively specified exception to sovereign immunity." *Brooks*, 259 A.3d at 371; *Dean*, 751 A.2d at 1132; *Snyder*, 562 A.2d at 312; *Clark v. Pa. Dep't of Transp.*, 962 A.2d 692, 694 (Pa. Cmwlth. 2008); *Marker v. Dep't of Transp.*, 677 A.2d 345, 348 (Pa. Cmwlth. 1996).

## 2. The Real Estate Exception

The real estate exception to sovereign immunity applies to claims for damages caused by "[a] dangerous condition of Commonwealth agency real estate[.]" 42 Pa.C.S. § 8522(b)(4).[9] In a seminal case, *Snyder*, the Pennsylvania Supreme Court interpreted the exception.

---

[9] Section 8522(b)(4) provides:

> (4) Commonwealth real estate, highways and sidewalks.--A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the

In that case, three people were seriously injured, and a fourth was killed, when they fell into a strip mine located adjacent to a state highway. *See Snyder*, 562 A.2d at 308-09. The mine operator had constructed an earthen embankment just beyond PennDOT's right-of-way to prevent cars from driving into the mine pit, which was approximately 80 feet deep. *See id.* The area was unlit and unmarked. *See id.* Following a roadside incident, the people climbed the embankment and fell into the pit. *See id.*

The three survivors commenced litigation against PennDOT, alleging that it had failed to warn the public of a dangerous condition "by lighting, or by erecting physical barriers or guardrails along the right-of-way." *Id.* at 309. In response, PennDOT asserted its immunity from suit because "the dangerous condition of the strip mine did not exist on Commonwealth realty." *Id.* The trial court agreed with PennDOT and granted it summary judgment, but this Court reversed, reasoning that although the injuries had occurred off Commonwealth property, the lack of a guardrail along PennDOT's right-of-way may have been the dangerous condition that caused the injuries. *See id.*

The Supreme Court rejected this reasoning. According to the Court, the plain language of the exception "indicate[s] that a dangerous condition must derive, originate from or have as its source the Commonwealth realty." *Id.* at 311. Thus, similar to precedent narrowly construing the real estate exception to governmental immunity,[10] the Court held that "sovereign immunity is waived . . .

---

jurisdiction of a Commonwealth agency, except conditions described in paragraph (5) [regarding potholes].

42 Pa.C.S. § 8522(b)(4).

[10] *See* 42 Pa.C.S. § 8542(b)(3). The *Snyder* Court favorably cited to decisions of this Court narrowly construing the exception. 562 A.2d at 312 (citing, *e.g.*, *Vince v. Ringgold Sch. Dist.*, 499 A.2d 1148 (Pa. Cmwlth. 1985)).

6

where it is alleged that the artificial condition or defect of the land itself causes an injury to occur." *Id.* at 312.

The Supreme Court then turned to the survivors' specific allegations and found them insufficient to trigger the immunity exception. For example, the survivors had asserted that the close proximity of the highway to the mine pit, the absence of lighting, and the deceptive appearance of the shoulder of the road presented an inherently dangerous condition. *Id.* However, the Court observed, "liability is not predicated on a defective condition on Commonwealth land, but rather the knowledge of an inherently dangerous condition contiguous with Commonwealth property . . . ." *Id.* According to the Supreme Court, "[w]hile this theory appears attractive, it is not supported by any exception to our immunity statute." *Id.* (thereafter reinstating summary judgment for PennDOT).

### 3. Injurious Trees

This Court has applied the rationale of *Snyder* in the specific context of trees and tree branches in several prior cases. In *Patton v. Department of Transportation*, 669 A.2d 1090, 1092 (Pa. Cmwlth. 1996), *rev'd on other grounds*, 686 A.2d 1302 (Pa. 1997), PennDOT was held liable when a limb fell from a decayed tree, killing a motorist. *See Patton*, 669 A.2d at 1092. On appeal, PennDOT asserted immunity and challenged the applicability of the real estate exception. *See id.* at 1093. However, the evidence adduced at trial "adequately established that the tree was a dangerous condition 'of' the Commonwealth realty." *Id.* at 1096-97 (highlighting testimony from property owners that the tree grew adjacent to the roadway but *within* the Commonwealth right-of-way). Therefore, the Court

concluded that the Commonwealth had waived immunity under the real estate exception. *Id.* at 1098.[11]

In *Marker*, a tree[12] fell on the decedent's car, causing her death. Following a trial, the jury returned a verdict in favor of the plaintiff and against PennDOT. 677 A.2d at 347. Resolving post-trial motions, the trial court rejected PennDOT's position that the real estate from which the tree grew was material, instead suggesting that PennDOT's decision to build a highway adjacent to a cliff constituted a dangerous condition of state real estate. *Id.* at 347. On appeal, this Court reversed, noting the absence of any evidence establishing that the tree was located within the Commonwealth's right-of-way. *Id.* at 348-49.[13] Further, the Court expressly rejected the plaintiff's theory of liability because it was "not predicated on a defective condition on Commonwealth land but rather the knowledge of an inherently dangerous condition contiguous with Commonwealth property . . . ." *Id.* at 349 (quoting *Snyder*, 562 A.2d at 312).[14]

In *Clark*, this Court affirmed the entry of nonsuit in favor of PennDOT based upon the agency's sovereign immunity. The *Clark* appellants had argued that PennDOT was liable "because its failure to remove an allegedly dangerous limb overhanging its right-of-way violated the duties set forth in [PennDOT's]

---

[11] In her brief, Appellee erroneously implies that *Patton* is directly on point because "the tree's base was located on the property of another adjacent to PennDOT's roadway *and* right-of-way." Appellee's Br. at 8 (emphasis added).

[12] It appears that the entire tree fell upon the car, rather than a portion of the tree or an overhanging branch. *See Marker*, 677 A.2d at 346 ("the dangerous condition, which was the tree . . ."), 347 (describing an adjacent cliff "where soft-rooted trees known to fall easily jut out . . .").

[13] The Court also noted a lack of evidence that "the tree overhung or encroached on the legal right-of-way." *Id.* at 348.

[14] The Court also rejected the plaintiff's reliance upon PennDOT's maintenance manual, which obligates employees to inspect adjacent property for dead, weakened, or decayed trees and limbs. *Id.* at 349.

8

maintenance manuals." 962 A.2d at 696. However, the *Clark* Court rejected this argument as moot, reasoning that the appellants must first satisfy a threshold legal requirement that a dangerous condition originated from Commonwealth realty. *Id.* The Court observed that "the tree [had] separated from its trunk and fell as a single unit from [a private individual's] property, well outside [of PennDOT's] right-of-way."[15] *Id.* at 697. Thus, PennDOT was entitled to sovereign immunity.[16] *Id.*

In *Polesky v. Department of Transportation* (Pa. Cmwlth., No. 1250 C.D. 2020, filed November 10, 2021) (unpublished memorandum),[17] a tree fell on motorists causing severe injuries, but the evidence established that the tree was located on property neither owned by the Commonwealth nor located within PennDOT's right-of-way. *See id.*, slip op. at 2. The evidence further indicated that the tree was diseased, but it is unclear from the opinion whether the entire tree, or just a portion or branch, caused the injuries. *See id.* at 13-14. The appellant conceded these facts but argued that PennDOT was liable nonetheless because the tree was within a slope easement.[18] *See id.* The *Polesky* Court rejected this

---

[15] The *Clark* Court noted a lack of evidence that any limb overhanging PennDOT's right-of-way constituted a dangerous condition. *See Clark*, 962 A.2d at 697.

[16] At the conclusion of the opinion, the *Clark* Court specifically distinguished *Patton*, in which an overhanging limb had constituted the dangerous condition while, in *Clark*, the record contained no evidence that any portion of the tree overhanging the road had constituted a dangerous condition. *See Clark*, 962 A.2d at 697. The Court also noted that "there is no evidence that any limb which overhung [PennDOT's] right-of-way separated from the decayed tree and impacted the Clarks' vehicle." *See id.* We reiterate, however, that the facts in *Patton* established that the tree originated from real estate located *within* PennDOT's right-of-way. *See Patton*, 669 A.2d at 1096-97.

[17] This Court's memorandum opinions are not binding precedent but may be cited for their persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[18] *See* Section 210 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. § 670-210 (recognizing that the Governor may approve "the condemnation of an easement for highway purposes from all property within the lines marked as required for right-of-way and

9

argument, concluding that a slope easement constitutes a lesser interest than a highway right-of-way and is insufficient to trigger the real estate exception. *See id.*, slip op. at 14-16. Specifically noting our narrow construction of the real estate exception, the *Polesky* Court determined that PennDOT was entitled to sovereign immunity. *See id.*, slip op. at 16.

## B. The Trial Court's Reasoning

In the instant matter, the trial court found *Patton* controlling, but upon close inspection, its interpretation of that precedent was flawed. The trial court acknowledged that the *Patton* tree was growing within the Commonwealth right-of-way. *See* Trial Ct. Op. at 7 (quoting *Patton*, 669 A.2d at 1096-97). Yet, in the trial court's view, the facts "strongly suggest that only the dangerously overhanging limb was in the right-of-way . . . and the base of the tree was outside Commonwealth property." *Id.* at 6. The trial court then reasoned that if *Patton* involved a tree with a base on private roadside property but with a dangerous condition overhanging the Commonwealth highway, it is indistinguishable from the facts herein and compels the conclusion that the claim falls within the real estate exception. *Id.* at 7.

It is unclear whether the trial court simply misconstrued the evidence in *Patton* or failed to recognize the significance of the tree's origin, *i.e.*, outside the Commonwealth's property but within its right-of-way. *See Patton*, 669 A.2d at 1096-97. Regardless, the trial court's reasoning is not persuasive.

---

the condemnation of an easement of support or protection from all property within the lines marked as required for slopes"). Essentially, a slope easement is an easement for the support and protection of the highway, which includes the right to construct, inspect, maintain, repair, reconstruct, and alter drainage facilities and the contour of the land. *See Polesky*, slip op. at 14-15. The easement does not prevent the property owner from making legal use of the area which is not detrimental to the necessary support and protection of the highway right-of-way and the traveling public. *See id.*

10

## C. The Arguments of the Parties

With this background in mind, we turn to the parties' arguments. PennDOT asserts that it is entitled to sovereign immunity and the real estate exception to that immunity is inapplicable. *See* PennDOT's Br. at 15. According to PennDOT, the real estate exception requires that an incident be "directly traceable to some artificial condition or defect of that party's real estate." *Id.* at 21-22. However, PennDOT asserts, the defective tree did not derive from, originate from, or have as its source any Commonwealth real estate; rather, the tree was on SEPTA's property. *See id.* at 22. Therefore, according to PennDOT, Appellee could not proceed with a claim under this exception. *See id.* at 22-23. Further, PennDOT asserts that the trial court misconstrued prior cases involving fallen trees and that these cases reinforce PennDOT's position.[19] *See id.* at 23.

In response, Appellee concedes that the tree's base was located on property neither owned nor controlled by PennDOT but nonetheless asserts that the rotted and diseased portion of the tree was located directly above PennDOT's roadway and right-of-way. *See* Appellee's Br. at 8-10. Appellee contends that it is a well-established historical principle that property rights in real estate extend from the ground into the air above the property. *See id.* at 16-17 (noting, *e.g.*, that a property owner may trim a neighbor's tree if its branches encroach upon the property

---

[19] Additionally, the Township has filed a brief contending that the trial court abused its discretion and should be reversed because the Sovereign Immunity Act must be narrowly interpreted. *See* Twp.'s Br. at 2-3. Further, the Township argues that established precedent provides that liability hinges on where a dangerous tree base originates, not where the branches overhang. *See id.* at 3. Accordingly, because the subject tree's trunk was located outside of PennDOT's right-of-way, a narrow application of the real estate exception means PennDOT cannot be liable. *See id.* at 4-5. The Township also argues that the trial court's order impermissibly expands tree liability where the clear intent of the General Assembly was to limit liability and preserve the public treasury. *See id.* at 5.

owner's property).[20]   Further, Appellee notes that the General Assembly has legislated PennDOT's "absolute right to trim, cut and remove any trees . . . growing on adjacent property insofar as they overhang or encroach upon the legal right-of-way of any State highway." *Id.* at 17 (quoting Section 410 of the State Highway Law, 36 P.S. § 670-410).   Thus, Appellee reasons, if the diseased portion of the tree is located in the "space above" the land, the condition "originates" from Commonwealth realty such that the exception to sovereign immunity may be defeated. *See id.* (citing *Jones*, 624 A.2d at 168).   Accordingly, Appellee concludes, liability can be imposed because the overhanging limb constituted a dangerous condition of the road and, ultimately, caused the fatal injuries. *See generally id.*

---

[20] For example, Appellee cites *Wheatley v. Baugh*, 25 Pa. 528, 529 (1855), in which the Pennsylvania Supreme Court noted the common law principle "that he who owns the soil has it even to the sky, and to the lowest depths. He may dig as deep and build as high as he pleases." *See Wheatley*, 25 Pa. at 530.

Appellee also cites to *Jones v. Wagner*, 624 A.2d 166 (Pa. Super. 1993), a case in which the appellants' trees were extending into the appellees' property, and the appellees clipped the protruding branches.  The appellants instituted an action seeking damages, and the trial court granted appellees' demurrer. *See Jones*, 624 A.2d at 167.  The Superior Court of Pennsylvania noted that it has long "been a principle of law that the landowner has the exclusive right to the space above the surface of his property," and that "to whomsoever the soil belongs, he also owns the sky to the depths. The owner of a piece of land owns everything above it and below it to an indefinite extent." *Jones*, 624 A.2d at 168 (quoting *Gostina v. Ryland*, 199 P. 298, 300 (Wash. 1921)).

Ultimately, the *Jones* Court concluded that a branch overhanging a landowner's property line is a technical trespass which he may alleviate by exercising self-help, and that, accordingly, the appellees were entitled to trim the encroaching branches. *See id.* at 169.  Further, Pennsylvania law affords "a full panoply of remedies to a landowner whose property is encroached by overhanging branches or tree limbs." *See id.* at 171.  These remedies included the right to self-help; the recouping of reasonable expenses from the trespasser; and the ability to seek equitable relief in the courts. *See id.*  Accordingly, the Court concluded that the appellees were exercising their right to trim the branches of the encroaching trees and could not be held liable for damages. *See id.*

12

## D. Analysis

In this case, Appellee has crafted a novel argument to expand the real estate exception beyond the narrow construction adopted by our Supreme Court in *Snyder* and applied by this Court in several subsequent cases. In *Snyder*, the Court observed that "of" in the phrase "a dangerous condition *of* Commonwealth agency real estate" was "critical." *Snyder*, 562 A.2d at 311 n.5 (emphasis added). The Court noted that "[t]he meaning ascribed to this preposition is 'used to indicate derivation, origin or source.'" *See id.* (citing The Random House Dictionary of the English Language Copyright 1966 by Random House, Inc.). The Court interpreted the use of this preposition as limiting the scope of the exception to dangers originating from Commonwealth realty or within its right-of-way. *See id.* at 311-12.

Similarly, the Supreme Court and this Court have rejected arguments that the Commonwealth loses immunity if it fails to take action within its right-of-way to protect against dangerous conditions outside its right-of-way. In *Snyder*, for example, the Court rejected an argument that PennDOT should have erected a barrier or signage or lighting to protect motorists from dangers originating from land just beyond the right-of-way. *Snyder*, 562 A.2d at 312. In *Marker*, this Court rejected an argument that the Commonwealth's highway was inherently dangerous because PennDOT had constructed the highway along a steep rock face. *See Marker*, 677 A.2d at 349. The knowledge or foreseeability of dangerous conditions that do not originate from the Commonwealth realty itself is insufficient to trigger the exception. *See id.*

Nevertheless, the trial court found *Patton* controlling. Based on our review of *Snyder*, however, its reasoning ignores the operative phrasing in *Patton* and other established case law. In *Patton*, it was immaterial whether the tree was

13

located on property owned by the Commonwealth or by a private party, because it was located on land *within* the Commonwealth's right-of-way. 669 A.2d at 1092. If the tree is located within that right-of-way, the Commonwealth's property interest is sufficient to trigger the exception. *See id.* Indeed, in *Clark*, this Court found that the real estate exception was not applicable because the base of the tree was located on property that was *not* owned by the Commonwealth and was *not* within PennDOT's right-of-way. *See Clark*, 962 A.2d at 697.

In two cases, *Marker* and *Clark*, this Court has observed the absence of evidence tending to prove that a tree, (1) originating beyond Commonwealth realty or right-of-way, (2) whose diseased or damaged branch or limb overhung the right-of-way, had caused injury, but those decisions offered no instruction or reason to believe that such facts would broaden the scope of the exception. *See Marker*, 677 A.2d at 348; *Clark*, 962 A.2d at 697. Nor should they: the *Snyder* Court specifically rejected an argument rooted in the knowledge or foreseeability of a dangerous condition, concluding that "the issue of duty . . . becomes moot" where the injurious defect is not "of the land itself." *Snyder*, 562 A.2d at 313.

We draw a similar inference from the *Marker* Court's rejection of the plaintiff's reliance on Section 410 of the State Highway Law and PennDOT's maintenance manual, which describe certain duties to inspect and maintain property adjacent to Commonwealth highways. *See, e.g.*, *Marker*, 677 A.2d at 349-50. Clearly, the exception to the Commonwealth's immunity is not coterminous with PennDOT's rights and responsibilities. S*ee also Snyder*, 562 A.2d at 311-12 (instructing that any duty analysis is limited to the scope of the exception to immunity).

14

With these observations in mind, this Court's unpublished decision in *Polesky* is instructive. In that case, we resisted an argument to expand the scope of the real estate exception to include property located beyond PennDOT's right-of-way but within a slope easement in its favor. *See Polesky*, slip op. at 13-16. While the issue before the *Polesky* Court is not entirely on point, Appellee similarly proposes a broad construction of property interests, and we find persuasive the *Polesky* Court's adherence to a narrow construction of the real estate exception.

In our view, the scope of rights and responsibilities set forth in the State Highway Law and PennDOT's maintenance manual, the maintenance rights implicit to a slope easement, and any rights of PennDOT to the air above Commonwealth realty are analogous. For this reason, we must reject Appellee's reliance on *Jones* and Appellee's broader argument in favor of expanding the real estate exception to sovereign immunity. Although it is true that a limb overhanging a landowner's property confers certain rights of self-help upon that landowner, it does not confer property interests sufficient to trigger the real estate exception. *See Snyder*; *Marker*; *Polesky*; *cf. Jones*, 624 A.2d at 168.

Instantly, Appellee's evidence established that the injurious tree grew from property owned by SEPTA, four feet outside of PennDOT's right-of-way. *See* Pl.'s Resp. to Mot. for Summ. J., Ex. A. Accordingly, this tree did not originate from Commonwealth realty. PennDOT could have trimmed this tree. *See, e.g.*, *Jones*, 624 A.2d at 171. However, PennDOT's right to perform maintenance does not confer property interests sufficient to expand the scope of the real estate exception to potentially injurious tree limbs extending from trees originating outside PennDOT's right-of-way, even those limbs that extend into the air above its right-of-way. Accordingly, the real estate exception to sovereign immunity is

15

inapplicable. *Snyder*, 562 A.2d at 312; *Marker*, 677 A.2d at 348; *Clark*, 962 A.2d at 697; *Polesky*, slip op. at 14-16.

## IV. CONCLUSION

This Court is constrained to narrowly construe exceptions to the Commonwealth's sovereign immunity. In this case, the trial court erred when it broadened the scope of the real estate exception. To trigger this exception, a dangerous condition must derive, originate from, or have as its source the Commonwealth realty. However, in this case, the dangerous condition was the branch of a tree that originated from beyond PennDOT's right-of-way. This is insufficient to trigger the real estate exception to the Commonwealth's sovereign immunity. For these reasons, we reverse the trial court's order and remand to the trial court for the entry of summary judgment in favor of PennDOT.

**LORI A. DUMAS, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ellen P. Schmidt as the Administratrix : 
of the Estate of Geoffrey J. Schmidt, : 
Deceased : 
 : 
 : No. 33 C.D. 2023
 : 
v. : 
 : 
 : 
Pennsylvania Department of : 
Transportation; Upper Merion : 
Township; The Southeastern : 
Pennsylvania Transportation : 
Authority; The Valley Forge Historical : 
Society; The Friends of Valley Forge : 
and John Does (1-10) : 
 : 
 : 
Appeal of: Department of : 
Transportation : 

# **O R D E R**

AND NOW, this 11th day of October, 2024, the order of the Court of Common Pleas of Montgomery County (trial court), entered December 9, 2022, is REVERSED, and the matter is REMANDED to the trial court for the entry of summary judgment in favor of the Pennsylvania Department of Transportation.

Jurisdiction relinquished.

**LORI A. DUMAS, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ellen P. Schmidt as the Administratrix   :
of the Estate of Geoffrey J. Schmidt,   :
Deceased   :
   :         No. 33 C.D. 2023
           v.       :
   :         Argued: April 9, 2024
Pennsylvania Department of   :
Transportation; Upper Merion   :
Township; The Southeastern   :
Pennsylvania Transportation   :
Authority; The Valley Forge Historical   :
Society; The Friends of Valley Forge   :
and John Does (1-10)   :
   :
Appeal of: Department of   :
Transportation   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE MATTHEW S. WOLF, Judge

DISSENTING OPINION
BY JUDGE WOLF                 FILED: October 11, 2024

Respectfully, I dissent. The Court of Common Pleas of Montgomery County's (trial court) order denying the Pennsylvania Department of Transportation's (PennDOT) motion for summary judgment is consistent with existing precedent interpreting the real estate exception to the Sovereign Immunity Act (Act), 42 Pa.C.S. § 8522(b)(4). The Majority opinion reversing the trial court's order is not consistent with existing precedent. I would affirm on the following basis.

On a motion for summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to

the existence of a genuine issue of material fact against the moving party. *Laich v. Bracey*, 776 A.2d 1022, 1024 (Pa. Cmwlth. 2001). With this standard in mind, the following facts appear of record.

This matter concerns the death of Geoffrey J. Schmidt, a motorist allegedly killed on a state highway by the failure of – not the base of a tree – a tree's "leader." The "leader" of a tree is defined as

> a primary or terminal shoot of a plant (as a main branch of an apple tree or the terminal shoot of a spruce tree) . . . the upper portion of the primary axis of a tree esp. [*sic*] when extending beyond the rest of the head and forming the apex. . . .

Reproduced Record (R.R.) 427a (citation omitted). Thus, this case deals with the upper portion of the main part of the tree, not a branch and not the base of the trunk of the tree. Central and critical to the disposition of this matter, the leader was alleged to have been at all times within the right-of-way of PennDOT property while the base of the tree was on property of the Southeastern Pennsylvania Transportation Authority (SEPTA). Most notably, the entire tree did not fall and kill Mr. Schmidt; its base remained fully intact. *Id.* at 277a-78a. PennDOT cut down the remaining tree after the tragedy and took a "post-incident photograph showing the level of rot and decay at the point where the main leader failed which was within the PennDOT [right-of-way]." *Id.* at 278a.

On February 21, 2018, a resident of Upper Merion Township contacted PennDOT and reported what was recorded by PennDOT as a "complaint/concern" of "overhanging trees and rocks over [the] roadway [that] appear to be in danger of falling onto the roadway on [State Route] 320 South Gulf Road northbound between [State Route] 330 Upper Gulph Road and Arden Road." R.R. 097a. On February

22, 2018, a PennDOT employee drove through and recorded the conditions. *Id.* The PennDOT employee rendered an opinion that no tree work was necessary but noted the area is a "candidate for future tree trimming." *Id.* Nine days later, at the "exact location" of PennDOT's inspection[1] on March 2, 2018, "the main northern leader which was decayed, failed and crushed Mr. Schmidt's car, [which] was inside of PennDOT's [right-of-way]." *Id.* at 387a. While the base of the subject tree was on SEPTA property, the failed leader was within PennDOT's right-of-way "before, during and after it fell." R.R. 392a.[2]

I agree with the Majority that the relevant inquiry for purposes of the real estate exception to sovereign immunity is whether the dangerous condition derives, originates, or has as its source the Commonwealth realty. *Snyder v. Harmon*, 562 A.2d 307 (Pa. 1989); *Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435 (Pa. 2001). I disagree, however, with the Majority's conclusion that because this case involves fatal injuries from a tree, the location of the tree's base is the dispositive factor in that analysis. *Schmidt v. Dep't of Transp.*, __ A.3d __ (Pa. Cmwlth., No. 33 C.D. 2023, filed October 11, 2024) (Majority Opinion), slip op. at 15-16.

Without reference to precedent, one could reasonably conclude that a rotted, diseased upper portion of a tree towering over a state-owned roadway within the right-of-way is a dangerous condition that derives, originates, or has at its source the Commonwealth realty. The Majority focuses solely on the location of the base of the tree, without reliance on the location of the portion of the tree that caused the death, the leader, which was in the right-of-way of PennDOT's road.

---

[1] *See* R.R. 286a (email dated April 6, 2018, from Michelle Laplante).

[2] Evidence of PennDOT's negligence is not relevant to the issue of sovereign immunity in this appeal. This record evidence is referred to solely as it relates to the leader being situated in PennDOT's right-of-way and the fact that maintaining the right-of-way was within the responsibility of PennDOT's maintenance of its realty.

Because the record establishes that the dangerous condition was not the tree's base, which remained intact, but rather the leader of the tree undisputedly located within PennDOT's right-of-way, I would deny PennDOT's attempt to invoke sovereign immunity at the summary judgment stage and allow the matter to proceed below.

In denying PennDOT's motion for summary judgment, the trial court appropriately relied on this Court's decisions in *Patton v. Pennsylvania Department of Transportation*, 669 A.2d 1090 (Pa. Cmwlth. 1996), *rev'd on other grounds*, 686 A.2d 1302 (Pa. 1997), and *Clark v. Department of Transportation*, 962 A.2d 692 (Pa. Cmwlth. 2008).

The *Patton* case arose "from the death of Brenda L. Patton when a large tree limb, overhanging the state highway on which she travelled, fell onto her car." *Patton*, 669 A.2d at 1092. This Court found sovereign immunity was waived under the real estate exception, and in determining the source of the dangerous condition, explained:

> In reaching our decision, we conclude that Patton has adequately established that the tree was a dangerous condition "of" the Commonwealth realty. It is undisputed that the tree was growing within feet of the roadway. Further, DOT did not dispute that, following the accident, DOT marked the tree with an orange "X" for removal and had the tree removed. Additionally, the owners of the property on which the tree stood testified that the tree was within the Commonwealth right-of-way. We agree, therefore, with the trial court's conclusion that the evidence is sufficient to show that the tree was within the Commonwealth right-of-way, under the care, custody and control of DOT.

*Id.* at 1096-97 (internal citations omitted). The *Patton* Court concluded that although situated on private property, the tree was within the Commonwealth right-of-way and therefore "of" Commonwealth realty for purposes of immunity. *Id.* at 1097 (referencing the testimony of the "*owners of the property on which the tree stood*"). *Patton* stands for the proposition that a dangerous condition situated in the Commonwealth's right-of-way is sufficient to invoke the real estate exception. This appeal presents facts remarkably analogous to *Patton*. Here, as in *Patton*, the base of the tree is situated on another's land, but the top of the tree, and the dangerous condition arising out of that portion of the tree, is situated in PennDOT's right-of-way.[3]

This interpretation of the real estate exception was later confirmed by this Court in *Clark*. There, a passenger was rendered paraplegic as a result of a decaying tree falling across a road and striking a car. When the tree fell, it separated *from its trunk base*, which was located 18½ feet beyond PennDOT's right-of-way on private property. *Clark*, 962 A.2d at 693 (emphasis added). Following a trial, PennDOT moved for compulsory nonsuit based on the real estate exception to the Act and judgment was ultimately entered in PennDOT's favor. On appeal, this Court affirmed, finding that the plaintiff failed to present evidence to prove that the decayed trunk that caused the injury derived from Commonwealth realty. In so doing, the *Clark* Court distinguished *Patton*, stating

---

[3] The Majority opinion unfairly criticizes the trial court's opinion suggesting the trial court misconstrued the evidence in *Patton* or failed to recognize the significance of the tree's origin. Majority Opinion, __ A.3d at __, slip op. at 10. In fact, the trial court explicitly focused on the *Patton* Court's lack of clarity, stating: "The precedential impact of *Patton* is muddled by a lack of clarity on the location of the tree. There is no doubt that the dangerous condition of the tree limb was within the Commonwealth right-of-way, but the opinion is not clear on the precise location of the remainder of the tree, including its base." R.R. 426a (Trial Court's 1925(a) Opinion at 6).

MSW - 5

> *Patton* is distinguishable because, in that case, the overhanging limb grew from a tree that was within the Commonwealth right-of-way, the overhanging limb constituted a dangerous condition of the road and the overhanging limb caused the fatal injuries when it fell and hit the car. *In contrast, the record in the present case contains no evidence that any portion of the tree which overhung Street Road constituted a dangerous condition. Moreover, there is no evidence that any limb which overhung [PennDOT's] right-of-way separated from the decayed tree and impacted the [plaintiffs'] vehicle.* Instead, the evidence established that the tree separated from its trunk and fell as a single unit from the Millers' property, well outside [PennDOT's] right-of-way. Therefore, as a matter of law, the [plaintiffs] cannot overcome [PennDOT's] entitlement to sovereign immunity.

*Clark*, 962 A.2d at 697 (emphasis added).

The record in this case contains the exact evidence the Court found to be absent in *Clark*. Here, the record shows that the dangerous condition was the *tree leader* located "well within PennDOT's [right-of-way]." *See* R.R. 236a-37a (Appellee's Response to Motion for Sum. J. 3-4); *id.* at 386a ("the subject tree is/was on S[EPTA] property *and the leader which failed did so in the PennDOT right of way*"); *id.* at 387a ("At its base, the subject tree was on S[EPTA's] property *and the location where the main northern leader which was decayed, failed and crushed Mr. Schmidt's car, was inside of PennDOT's [right-of-way.]*"); *id.* at 392 ("After it cut down the portion of the tree that didn't fall, PennDOT took this post-incident photograph showing the level of rot and decay *at the point where the main leader failed which was within the PennDOT [right-of-way.]*"); *id.* ("Before, during and after it fell, *the failed leader was entirely within the PennDOT [right-of-way]* and the tree's base was on S[EPTA's] property.") (emphasis added).

The General Assembly's intent in the Act is to shield government from liability, except as provided in the statute itself. *Jones*, 772 A.2d at 440. As such, courts are required to apply a rule of strict construction in interpreting the Act's real estate exception. *Id.* However, applying a strict construction cannot go so far as to require the Court to reach an absurd result. The consequence of the Majority's holding is that the Commonwealth is permitted to turn a blind eye to hazards in the air above its property, but not to hazards that touch the earth on the same property, even when both present a clear danger. In *Jones*, the Pennsylvania Supreme Court made it clear that the "Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that a substance or an object on Commonwealth realty was the result of a defect in the property or in its construction, **maintenance**, repair, or design. *Id.* at 443-44 (emphasis added). At this stage in the underlying proceedings, the record shows a basis to deny, for now, sovereign immunity for failing to maintain the rotten leader in the right-of-way of PennDOT's road.

Here, the trial court was obligated to view this evidence in the light most favorable to Ms. Schmidt, the nonmoving party, and it properly concluded that "[b]ecause the record in the present case includes evidence that the dangerous condition in the falling tree limb did overhang the PennDOT right-of-way, summary judgment must be denied." R.R. 406a. Contrary to the Majority's conclusion, affirming the trial court's order does not expand the real estate exception to the Act - it properly applies it consistent with this Court's precedent. For these reasons, I would affirm.

_____
MATTHEW S. WOLF, Judge

MSW - 7